*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

No. 13-CV-495

DAVID P. FRANKEL, APPELLANT,

v.

DISTRICT OF COLUMBIA OFFICE FOR
PLANNING AND ECONOMIC DEVELOPMENT, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-312-10)

(Hon. Judith Bartnoff, Trial Judge)

(Submitted May 13, 2014                    Decided February 12, 2015)

*Alan B. Frankle* was on the brief for appellant.

*Irvin B. Nathan*, Attorney General for the District of Columbia, with whom *Todd Kim*, Solicitor General, *Loren L. AliKhan,* Deputy Solicitor General, and *Mary L.Wilson*, Senior Assistant Attorney General, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, BECKWITH, *Associate Judge*, and KING, *Senior Judge*.

BECKWITH, *Associate Judge*: David Frankel appeals from an order granting in part and denying in part his application for attorney's fees in his Freedom of Information Act suit against the District of Columbia Office of the Deputy Mayor for Planning and Economic Development. The trial court ruled that Mr. Frankel

was eligible for and entitled to attorney's fees, but it did not award all the fees that Mr. Frankel sought. Mr. Frankel argues on appeal that the trial court abused its discretion by denying attorney's fees for time spent preparing three motions that were either denied or never filed. We agree, and we reverse and remand for proceedings not inconsistent with this opinion.

## I. Factual Background

In 2008, the D.C. Office of the Deputy Mayor for Planning and Economic Development (ODMPED) announced plans to construct a new library and a private multi-story residential building on the site of the old Tenley-Friendship Neighborhood Library and the soccer field of the adjacent Janney Elementary School in Northwest Washington, D.C. On December 9, 2009, Mr. Frankel submitted a request to ODMPED under the D.C. Freedom of Information Act (FOIA), D.C. Code §§ 2-531 to -540 (2012 Repl.), to obtain public records relating to this development.[1] ODMPED did not respond within the fifteen days allowed by the statute. *See* D.C. Code § 2-532 (c). On January 21, 2010, Mr. Frankel sued ODMPED pursuant to D.C. Code § 2-537 (a-1) to compel a response. ODMPED filed an answer on February 18, 2010, without responding to Mr. Frankel's FOIA

---

[1] Mr. Frankel also submitted other FOIA requests to ODMPED before and after this FOIA request; those requests are not at issue in this case.

request.

On April 22, 2010, the day before a scheduling conference with the trial court, ODMPED disclosed fifty-nine emails to Mr. Frankel. At the conference, the trial court ordered ODMPED to file a dispositive motion, an affidavit describing the record searches it had performed, and a *Vaughn* index[2] by May 21, 2010. ODMPED filed a motion for summary judgment on May 21, supported by an affidavit of FOIA Officer Mary Margaret Plumridge. ODMPED argued that it had complied with Mr. Frankel's request and that all the documents it withheld were exempt from disclosure under the deliberative process or attorney-client privileges. Mr. Frankel first responded by sending ODMPED a motion seeking Rule 11 sanctions for allegedly making false statements in its summary judgment motion. *See* Super. Ct. Civ. R. 11 (c). ODMPED then filed a praecipe clarifying several statements in the motion. Mr. Frankel did not file the Rule 11 motion with the court.

Mr. Frankel next responded by filing a motion to strike the Plumridge affidavit because of, among other things, vagueness, lack of personal knowledge, and a deficient *Vaughn* index. ODMPED responded by filing two supplemental

---

[2] A *Vaughn* index itemizes any withheld documents and explains why each document is exempt from disclosure. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

affidavits from Ms. Plumridge and another FOIA Officer, Sean Madigan, as well as a new *Vaughn* index listing more withheld documents. Mr. Frankel learned from the supplemental affidavits that ODMPED had not searched the files of several people listed in the FOIA request. Mr. Frankel's motion to strike was denied on July 31, 2010. ODMPED produced additional emails to Mr. Frankel at that time.

Mr. Frankel also filed a cross-motion for summary judgment to compel production of more documents and award him attorney's fees. When the parties met on October 22, 2010, the trial court did not rule on the summary judgment motions but it ordered ODMPED to perform further searches to fulfill Mr. Frankel's request.[3] ODMPED complied and produced additional documents on January 5 and 7, 2011. More documents were produced on April 21, 2011, including a document Mr. Frankel described as "at the very heart" of his FOIA request. Mr. Frankel then acknowledged that he had received everything he wanted and the trial court denied the pending motions for summary judgment as moot, except with respect to Mr. Frankel's request for attorney's fees.

Mr. Frankel sought $45,836.14 in attorney's fees and $1,105.56 in costs.

---

[3] Although this does not affect our decision, ODMPED disputes that the trial court "ordered" it to take further action, instead contending that it "agreed to" broaden its search and clarify its *Vaughn* index.

The trial court awarded him roughly half of that—$20,313.46 in fees and $796.82 in costs. The court ruled that Mr. Frankel was eligible for attorney's fees because he "prevail[ed] in whole or in part" in his suit, *see* D.C. Code § 2-537 (c), and that he was entitled to fees under the four-factor test in *Fraternal Order of Police v. District of Columbia*, 52 A.3d 822 (D.C. 2012). But the trial court denied Mr. Frankel fees for the time he spent on unsuccessful actions. On appeal, Mr. Frankel argues that the trial court abused its discretion by denying fees for the time spent on three pleadings: the Rule 11 motion, the motion to strike the Plumridge affidavit, and the summary judgment response and cross-motion.[4]

## II. The Catalyst Theory

As a preliminary matter, ODMPED argues that Mr. Frankel is not actually eligible to receive any fees because he did not "prevail[] in whole or in part" under

---

[4] Mr. Frankel also argues that the trial court erred by finding that only two of the four *Fraternal Order of Police* factors for determining whether a party is entitled to attorney's fees were in his favor. *See Fraternal Order of Police v. District of Columbia*, 52 A.3d 822 (D.C. 2012). The trial court did rule that Mr. Frankel was entitled to a fee award under that four-factor balancing test, however. "[W]e review judgments, not findings," *Beraki v. Zerabruke*, 4 A.3d 441, 445 (D.C. 2010), so we do not address the reasoning behind the trial court's decision if no party has protested the result. Mr. Frankel argues that the court might have awarded him more fees had it found four instead of two factors in his favor, but the four factors are used to determine entitlement to an award, not its size, and nothing in the trial court's order suggests that the amount it awarded was based on the strength of Mr. Frankel's showing under the four factors.

D.C. Code § 2-537 (c). ODMPED contends that the D.C. FOIA does not allow fee recovery under the "catalyst theory" in which "a plaintiff is a 'prevailing party' if it achieves [its] desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 601 (2001). Instead, ODMPED argues that fee awards are only available when a plaintiff "has been awarded some relief by the court," *see id.* at 603, and that Mr. Frankel was not eligible for a fee award here because "the District voluntarily produced the requested documents after the plaintiff filed his complaint but before any judicial award of relief on the merits."[5]

In 1992, this court noted that attorney's fee awards were proper in FOIA cases when there was a "causal nexus . . . between the action [brought in court] and the agency's surrender of the information." *McReady v. Dep't of Consumer & Regulatory Affairs*, 618 A.2d 609, 616 (D.C. 1992) (brackets in original).[6] This standard is a version of the catalyst theory. ODMPED argues, however, that *McReady* has been "effectively overrule[d]." ODMPED's argument can be

[5] ODMPED did not cross-appeal the trial court's order awarding fees, so it does not challenge the award Mr. Frankel already received. It simply argues that this court should not enlarge an award for which Mr. Frankel was never legally eligible.

[6] This issue was not central to the appeal, but the court stated that the "causal nexus" standard was correct and cited D.C. Circuit case law for support. *Id*.

summarized as follows: *McReady* recognized the catalyst theory for D.C. FOIA suits. 618 A.2d at 616. The Supreme Court later held in *Buckhannon* that the words "prevailing party" in two federal civil rights statutes did not include the catalyst theory. 532 U.S. at 605. The D.C. Circuit subsequently held that *Buckhannon* applied to the federal FOIA. *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452 (D.C. Cir. 2002). This court then adopted *Buckhannon* when interpreting "prevailing party" in D.C. Code § 1-606.08 pertaining to suits within the Office of Employee Appeals. *Settlemire v. District of Columbia Office of Emp. Appeals*, 898 A.2d 902, 907 (D.C. 2006). As a result, in ODMPED's view, *Buckhannon* applies to the D.C. FOIA as well.

We disagree. First, *Settlemire* was not a FOIA case, and its holding does not control the interpretation of a different statute containing different language. The provision at issue in *Settlemire*—D.C. Code § 1-606.08—only provides awards to a "prevailing party," whereas the FOIA statute provides awards to a party that "prevails in whole or in part." D.C. Code § 2-537 (c). This difference suggests that the D.C. Council intended to authorize attorney's fees in FOIA cases more often than in other types of cases.

Second, the D.C. Circuit's opinion in *Oil, Chem. & Atomic Workers* was superseded by statute when Congress amended the federal FOIA to codify the

catalyst theory, explicitly authorizing attorney's fees when the plaintiff obtains relief through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552 (a)(4)(E)(ii)(II) (2012); *see Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011). To the extent that we look to the federal FOIA as persuasive authority when interpreting our own FOIA, *see Fraternal Order of Police*, 52 A.3d at 829, we note that *Buckhannon* does not apply to federal FOIA suits and we interpret the D.C. FOIA similarly.[7]

OMDPED argues that because Congress amended the federal FOIA after *Buckhannon* but the D.C. Council did not amend our FOIA, we must "continue" to apply *Buckhannon* and *Settlemire* here. Yet we have not ever applied *Buckhannon* or *Settlemire* to attorney's fees disputes under the D.C. FOIA.

---

[7] ODMPED correctly points out that we engage in this practice only "when the provisions of the District's law 'mirror' the federal law." The fee award provisions here are nearly identical, however: federal law awards plaintiffs who "substantially prevail[]," 5 U.S.C. § 552 (a)(4)(E)(i) (2012), whereas D.C. law awards those who "prevail in whole or in part," D.C. Code § 2-537 (c). The federal amendment at issue merely interprets the ambiguous statutory term "prevail[]." As explained by Superior Court Judge Anthony Epstein in a similar case, "If federal courts had supplied the definition of the 'substantially prevailed' eligibility standard in the federal FOIA, D.C. courts would follow the federal case law in interpreting the same ambiguous test in the D.C. FOIA. The result is the same when Congress has supplied that definition." *Fraternal Order of Police v. District of Columbia*, No. 2012 CA 4125 B, slip op. at 8 (D.C. Super. Ct. Jan. 18, 2013).

Instead, the catalyst theory has been a part of the D.C. FOIA since its inception. When drafting FOIA, the D.C. Council stated its intent to craft enforcement sanctions mirroring the "federal model," *see* D.C. Council Report on Bill 1-119 at 10 (Sept. 1, 1976), and in 1976 this included attorney's fee awards based on the catalyst theory. *See Vt. Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir. 1976) (attorney's fees proper if FOIA action is "reasonably . . . regarded as necessary" and has "substantial causative effect on the delivery of the information"); *Goldstein v. Levi*, 415 F. Supp. 303, 305 (D.D.C. 1976); *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977); *Burke v. Dep't of Justice*, 432 F. Supp. 251, 252 (D. Kan. 1976), *aff'd*, 559 F.2d 1182 (10th Cir. 1977). We reaffirmed use of the catalyst theory in *McReady*, 618 A.2d at 616. And Congress acted to "clarif[y] that the Supreme Court's decision in *Buckhannon* . . . does not apply to [federal] FOIA cases," 153 CONG. REC. S15,830-01 (daily ed. Dec. 18, 2007) (statement of Sen. Patrick Leahy), which eliminated any likelihood that this court would apply *Buckhannon* to FOIA simply by adopting contemporary federal FOIA law. *Cf. Fraternal Order of Police*, 52 A.3d at 829. Given this backdrop, we decline to infer that the D.C. Council intended to abolish the longstanding catalyst theory through its inaction. *See U.S. Parole Comm'n v. Noble*, 693 A.2d 1084, 1103 (D.C. 1997) (noting "the hazard of attempting to impute meaning to legislative inaction").

Finally, the catalyst theory accurately reflects the purposes of the FOIA attorney's fee provision. The D.C. Council intended FOIA to contain strong enforcement measures because under the prior regime, "agencies risk[ed] practically nothing by not responding to a request." D.C. Council, Report on Bill 1-119 at 7 (Sept. 1, 1976). The D.C. FOIA contains a statement of purpose emphasizing that "provisions of this subchapter shall be construed with the view toward expansion of public access and the minimization of costs and time delays to persons requesting information." D.C. Code § 2-531. The Council further stated that the fee award provision is meant to "encourage citizens to seek the release of information wrongfully withheld." D.C. Council, Memorandum on Bill 1-119 at 8 (July 23, 1975). The catalyst theory advances these goals by allowing more litigants to recover attorney's fees and creating an incentive for the D.C. government to disclose more documents in the first place. *See Buckhannon*, 532 U.S. at 639, 644 (Ginsburg, J., dissenting) (noting that the catalyst theory encourages defendants "to conform . . . conduct to the legal requirements before litigation is threatened" and "encourages private enforcement of laws").

For these reasons, we hold that the catalyst theory continues to operate in D.C. FOIA cases, and a party "prevails in whole or in part" under § 2-537 (c) when he demonstrates a "causal nexus . . . between the action [brought in court] and the

agency's surrender of the information."[8]  *McReady*, 618 A.2d at 616.  The trial court here deemed it "undisputed" that Mr. Frankel was eligible for fees under the catalyst theory.  We agree that the extensive litigation in this case had a "causal nexus" to ODMPED's ultimate production of documents[9] and that Mr. Frankel was eligible for attorney's fees.[10]

### III.    Mr. Frankel's Claims

We now turn to the question whether Mr. Frankel was entitled to more attorney's fees than he received.  We review the trial court's decision to deny fees for an abuse of discretion.  *Fraternal Order of Police*, 52 A.3d at 833.  A court "by definition abuses its discretion when it makes an error of law."  *Ford v. ChartOne, Inc.*, 908 A.2d 72, 84 (D.C. 2006).

---

[8]  This standard is parallel to the federal definition that allows recovery when the plaintiff "obtain[s] relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552 (a)(4)(E)(ii)(II) (2012).

[9]  Whether the trial court ordered ODMPED to act or not, *see* footnote 3, *supra*, it is clear that ODMPED expanded its search as a result of discussions with Mr. Frankel and the judge in the trial court.

[10]  ODMPED does not argue that Mr. Frankel was not entitled to fees under the *Fraternal Order of Police* balancing test.  *See* 52 A.3d at 827 (a party must be both "eligible" and "entitled" to fees to receive an award); *see also* footnote 4, *supra*.

## A.    The Rule 11 Motion

Mr. Frankel argues that the trial court abused its discretion by concluding that he was not entitled to attorney's fees for the time spent in connection with his Rule 11 motion.[11]   In general, a party can recover fees for work that is "'both useful and of a type ordinarily necessary to advance the . . . litigation' to the point where the party succeeded." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (quoting *Webb v. Bd. of Educ.*, 471 U.S. 234, 243 (1985)).

The trial court ruled that Mr. Frankel was not entitled to fees for "a motion his attorney never filed," citing *Cooper v. U. S. R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994).  To the extent that the trial court understood this as a per se rule, it is inconsistent with the catalyst theory.  *Cooper* involved time spent preparing a pleading for which leave to file was denied and there was no indication that the

---

[11]  ODMPED argues that Mr. Frankel waived this issue by failing to discuss it in his reply to ODMPED's opposition brief in the trial court or in his motion for reconsideration of the trial court order for attorney's fees.  ODMPED points to no case law or court rule, however—and we are aware of none—suggesting that a party waives an issue by choosing not to address it in a reply brief or a motion for reconsideration.  Mr. Frankel properly raised this issue in his application for attorney's fees by specifically requesting fees based on the hours spent preparing and conferring with opposing counsel on his Rule 11 motion.  The trial court denied attorney's fees for those hours and Mr. Frankel appealed the issue to this court.  As this issue was properly presented, we address the merits.

pleading had any effect on the proceedings. *Id.* Fees in that case may have been unwarranted, but when a party drafts a motion or pleading and sends that document to opposing counsel, who alters his behavior because of the document, attorney's fees are reasonable even if the document is never filed. *See, e.g.*, *Searles v. Van Bebber*, 64 F. Supp. 2d 1033, 1039 (D. Kan. 1999), *vacated on other grounds*, 251 F.3d 869 (10th Cir. 2001) (awarding attorney's fees when party prepared a pleading, contacted opposing counsel, and reached a settlement making it unnecessary to file the pleading). This is especially true in the context of a Rule 11 motion because court rules prohibit a party from filing the motion until conferring with opposing counsel to resolve the situation. Super. Ct. Civ. R. 11 (c)(1)(A). As Mr. Frankel notes, the Rule 11 process works "as intended" when opposing counsel receives a Rule 11 motion and corrects the challenged document without the motion ever being filed in court.

Here, the record shows that ODMPED filed a motion for summary judgment on May 21, 2010, and that, after Mr. Frankel contacted ODMPED by phone and email about a Rule 11 motion "based on misstatements of fact in the Plumridge Affidavit," ODMPED filed a praecipe clarifying several statements in its motion regarding Ms. Plumridge. Mr. Frankel has produced sufficient evidence that his Rule 11 motion and its presentation to opposing counsel caused ODMPED to file a corrected praecipe, which was useful and necessary to advancing the litigation by

aiding the trial court in its consideration of the case. *Del. Valley Citizens' Council*, 478 U.S. at 561.

### B. The Motion To Strike

Mr. Frankel argues that the trial court abused its discretion by concluding that Mr. Frankel was not entitled to attorney's fees for the time spent in connection with his motion to strike the Plumridge affidavit. The trial court concluded that Mr. Frankel was not entitled to fees for "unsuccessful" claims. The central question, however, is whether the work was useful and necessary in advancing the litigation to its successful conclusion. *Del. Valley Citizens' Council*, 478 U.S. at 561. Moreover, "[a] court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'" *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)); *Natural Motion by Sandra, Inc. v. District of Columbia Comm'n on Human Rights*, 726 A.2d 194, 198 (D.C. 1999) (quoting *Hensley*, 461 U.S. at 435).

Mr. Frankel objected to the Plumridge affidavit supporting ODMPED's motion for summary judgment because it was, among other things, "vague and ambiguous" and contained a "deficient" *Vaughn* index. In response, ODMPED filed a supplemental affidavit by Mary Margaret Plumridge, a new affidavit by

former ODMPED FOIA Officer Sean Madigan, and a new *Vaughn* index. Although the trial court then denied Mr. Frankel's motion to strike, the record establishes that Mr. Frankel's motion to strike resulted in ODMPED's decision to file these new affidavits and *Vaughn* index, which cured the problems Mr. Frankel had identified. The Madigan affidavit also contained new information that more accurately informed Mr. Frankel of the extent of ODMPED's prior searches, and once the trial court was made aware of this information, ODMPED expanded its search and produced additional records. So even though the motion to strike was denied, the motion was both useful and necessary for Mr. Frankel's successful result in this litigation.

### C.    The Summary Judgment Cross-Motions

Mr. Frankel also challenges the trial court's denial of attorney's fees for the time he spent responding to ODMPED's summary judgment motion and preparing his own cross-motion—a ruling based on the sole ground that the motion was not meritorious. As with the motion to strike, the relevant question is not whether the pleadings were successful but whether they were useful and necessary to advancing the litigation.

At the outset, it is indisputable that Mr. Frankel's opposition brief was causally connected to the ultimate production of documents. Had Mr. Frankel

yielded to ODMPED's motion for summary judgment, the case would have closed and he would have been left without the documents he sought and ultimately received. Because Mr. Frankel's suit was the catalyst for ODMPED's production of documents, Mr. Frankel's opposition to ODMPED's motion for summary judgment was undoubtedly useful and necessary to advance the litigation to achieve that result, *Del. Valley Citizens' Council*, 478 U.S. at 561, which did not occur until nearly a year later.

And while we are less confident that Mr. Frankel's cross-motion for summary judgment was useful and necessary for his ultimate victory, where "the actual work performed by lawyers to develop the facts [or law] of both claims [is] closely intertwined, . . . [i]t is sometimes virtually impossible to determine how much time was devoted to one category or the other, and the incremental time required to pursue both claims rather than just one is likely to be small." *Hensley*, 461 U.S. at 448 (Burger, C.J., concurring); *cf. Fox*, 131 S. Ct. at 2214. We therefore conclude that the trial court should have awarded Mr. Frankel fees for the time spent preparing his opposition brief to ODMPED's summary judgment motion as well as his own cross-motion for summary judgment.

## IV.    Conclusion

While the trial court correctly found that the catalyst theory applies to

attorney's fee awards under the D.C. Freedom of Information Act, the court erred in denying Mr. Frankel attorney's fees for work solely because it was "never filed" or "unsuccessful." We remand to the trial court for proceedings not inconsistent with this opinion.

*So ordered.*