*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 15-CV-1182 & 15-CV-1328

KIRBY VINING, APPELLANT/CROSS-APPELLEE,

v.

DISTRICT OF COLUMBIA, APPELLEE/CROSS-APPELLANT.

Appeals from the Superior Court
of the District of Columbia
(CAB-8189-13)

(Hon. Stuart Nash, Trial Judge)

(Submitted April 19, 2017                    Decided December 20, 2018)

*Don Padou* for appellant/cross-appellee.

*Carl J. Schifferle*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, and *Loren L. AliKhan*, Deputy Solicitor General at the time the brief was filed, were on the brief, for appellee/cross-appellant.

Before FISHER, BECKWITH and EASTERLY, *Associate Judges*.

BECKWITH, *Associate Judge*:  Plaintiff Kirby Vining's suit under the Freedom of Information Act (FOIA) resulted in the District of Columbia's disclosure of previously withheld documents. Mr. Vining moved for attorney's fees, and the trial court awarded some but not all of the amount requested. Both

parties now appeal this award.  We reverse in part and remand for reconsideration in part.

## I.  Background

In November 2013, Mr. Vining submitted a request under the District of Columbia Freedom of Information Act, D.C. Code § 2-531 to -540 (2012 Repl.),[1] to Advisory Neighborhood Commissioner C. Dianne Barnes.  Ms. Barnes was the chair of Advisory Neighborhood Commission (ANC) 5E, a publicly elected body whose jurisdiction includes the McMillan Reservoir Slow Sand Filtration Site.[2] Mr. Vining was a member of Friends of McMillan Park and had been involved in the public discussion over the fate of the McMillan site for several decades.  His FOIA request sought emails and other documents related to the development of the site from both Ms. Barnes's governmental and nongovernmental email accounts.[3]

---

[1]  All subsequent D.C. Code citations are to the 2012 Replacement volume.

[2]  The McMillan site, constructed between 1902 and 1905, was the District's first large-scale water filtration facility.  It has been out of commission for some time and ownership was transferred from the federal government to the District government in 1987.  The District selected a developer, Vision McMillan Partners, to build a mixed-use development on the site, but the site remains undeveloped. *See Friends of McMillan Park v. District of Columbia Zoning Comm'n*, 149 A.3d 1027 (D.C. 2016).

[3]  Mr. Vining separately sought documents related to the development of the McMillan site from the Council of the District of Columbia.  *See Vining v. Council*

(continued…)

In her reply, Ms. Barnes asserted that she had no documents responsive to Mr. Vining's request beyond those that had already been disclosed to the public. Mr. Vining then filed this suit, alleging constructive denial of his FOIA request and seeking declaratory and injunctive relief as well as fees and costs.

In response to the complaint and after negotiations with Mr. Vining's counsel, the District searched Ms. Barnes's governmental email and documents in her possession and produced 368 documents responsive to Mr. Vining's request, but it argued that FOIA did not require it to search Ms. Barnes's personal Yahoo email account and moved to dismiss the suit. On July 9, 2014, the trial court issued a written order denying the motion and ordering the District to search Ms. Barnes's personal email account and produce emails responsive to Mr. Vining's request.

The District continued to fight the production order, first by moving for reconsideration and a stay and then, when that motion was denied, by appealing to this court. While that appeal was pending, Mr. Vining filed a motion for partial summary judgment. The trial court denied this motion without prejudice on the

---

(…continued)
*of the District of Columbia*, 140 A.3d 439 (D.C. 2016).

ground that the ongoing appellate proceedings deprived it of jurisdiction. The appeal was eventually dismissed with the District's consent. Meanwhile, the District informed the trial court that it had attempted to retrieve the emails from Ms. Barnes's personal email account but technical problems made it impossible to do so in any "efficient and effective way." It estimated that collecting, reviewing, and redacting the emails would require approximately 361 hours of work at a total cost of over $8,000, and requested that Mr. Vining pay the cost in advance pursuant to D.C. Code § 2-532 (b).

Several months of back and forth ensued—including legal arguments and technical discussion about searching and retrieving emails from the personal account—during which time the trial court granted the District an extension of time to comply with its July 9 order. On February 11, 2015, the court partially granted the District's motion for payment of costs in advance but rejected its calculation of the cost chargeable to Mr. Vining. Noting that the District had not provided an estimate from an information technology specialist and that time spent on document review (as opposed to "document search and duplication") was not covered by D.C. Code § 2-532 (b), the court decided that the work could be completed in no more than fifteen hours of labor at a cost of $420.

Mr. Vining paid the $420 production fee, and the District provided him with

a CD containing 3,409 responsive documents from Ms. Barnes's personal email account. The District also provided a *Vaughn* index[4] of documents withheld or redacted pursuant to FOIA exemptions. Mr. Vining waived his claims to most of these documents but contested the withholding of others under the deliberative process and privacy exemptions. After an *in camera* review, the trial court ordered the release of some of the withheld documents and ruled that the rest were not responsive to the FOIA request. The District complied and produced the ordered documents, ending the merits phase of the litigation.

Mr. Vining subsequently filed a motion seeking attorney's fees and costs pursuant to D.C. Code § 2-537 (c), which the court granted in part and denied in part. The court concluded that Mr. Vining was the prevailing party and, applying the four-factor test we approved in *Fraternal Order of Police, Metropolitan Police Department Labor Committee v. District of Columbia*, 52 A.3d 822, 830–32 (D.C. 2012), found that the factors weighed in favor of an award of attorney's fees. Finding that "the District's litigation posture was reasonable through July 9, 2014," but unreasonable after that date, the court awarded Mr. Vining only those fees

---

[4] A *Vaughn* index is a privilege log that lists each item withheld under FOIA and explains the basis for refusing to produce that item. *See Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973); *Vining*, 140 A.3d at 449.

incurred after that date. After deducting several other expenses, the court awarded Mr. Vining fees and costs in the amount of $66,121.90. Both parties timely appealed from the award.

## II. Standards

FOIA allows a court to award a prevailing party "reasonable attorney fees and other costs of litigation." D.C. Code § 2-537. A litigant seeking an award of attorney's fees under this provision must show first that he is *eligible* for attorney's fees in that he has "prevail[ed] in whole or in part" in the FOIA suit. D.C. Code § 2-537 (c); *see Riley v. Fenty*, 7 A.3d 1014, 1020–21 (D.C. 2010). Second, he must show that he is *entitled* to attorney's fees, a discretionary determination made by the trial court taking into account four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Fraternal Order of Police*, 52 A.3d at 829 (quoting *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)).[5] And third, he must show that the fee award he is requesting is *reasonable*. *See Judicial*

---

[5] The four factors are not exclusive, and trial courts are not precluded from considering additional factors. *Fraternal Order of Police*, 52 A.3d at 832.

*Watch, Inc. v. United States Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006).[6]

We review the trial court's decision to grant or deny fees for abuse of discretion. *See Frankel v. District of Columbia Office for Planning & Econ. Dev.*, 110 A.3d 553, 558 (D.C. 2015). "A court 'by definition abuses its discretion when it makes an error of law.'" *Id.* (quoting *Ford v. ChartOne, Inc.*, 908 A.2d 72, 84 (D.C. 2006)).

Neither party challenges the trial court's determination that Mr. Vining was eligible for and entitled to some attorney's fees and costs. Mr. Vining contends that the trial court incorrectly excluded all fees and costs incurred prior to July 9, 2014, and certain specific expenses incurred after that date. The District, on the other hand, defends the trial court's award with the exception of the fees awarded for time spent on two motions it says were unrelated to the outcome of the litigation. We address each claim in turn.

---

[6] *See also Fraternal Order of Police*, 52 A.3d at 829 (explaining why our court generally follows federal precedent regarding FOIA fee awards). *But cf. Donahue v. Thomas*, 618 A.2d 601, 607 & n.15 (D.C. 1992) (declining to follow the rationale of D.C. Circuit cases decided after the enactment of the D.C. FOIA to the extent they authorize FOIA fee awards to pro se nonattorney plaintiffs).

### III.   Work Through July 9, 2014

Mr. Vining first contends that the trial court erred in excluding from the fee award all attorney's fees incurred on or prior to July 9, 2014, an amount equal to $15,597.50. Applying the four-factor test we approved in *Fraternal Order of Police*, 52 A.3d at 830–32, the trial court held that Mr. Vining was entitled to a fee award, but only for the portion of the litigation that took place after that date. Specifically, the court found, in analyzing the fourth entitlement prong (the reasonableness of the agency's withholding), that the District's position was reasonable up through July 9, 2014, when the court issued its written decision ruling that Mr. Vining was entitled to responsive documents from Ms. Barnes's personal email account. With respect to the period of litigation after that date, however, the court found the District's position unreasonable, and it therefore concluded that Mr. Vining was entitled to costs and fees incurred after July 9, 2014.

Mr. Vining contends that the trial court misapplied the four-factor test, and hence abused its discretion, in two ways.

### A.

Mr. Vining first argues that the four factors are employed only for the

threshold entitlement determination, and that once a litigant is held to be eligible for and entitled to fees, the only remaining question is the reasonableness of the claimed fees. Mr. Vining treats the issue of entitlement to fees as a unitary determination—if a litigant is entitled to fees, he must be entitled to fees for the entire litigation, as long as those fees are reasonable.

We perceive no justification for restricting the trial court's exercise of discretion to a single all-or-nothing decision determining entitlement to fees incurred across an entire lawsuit. As the District points out, because an award of fees under D.C. Code § 2-537 (c) is permissive rather than mandatory, *Fraternal Order of Police*, 52 A.3d at 827–28, it makes sense to permit the trial court to differentiate among different categories of documents or phases of litigation when evaluating a litigant's entitlement to fees. Federal courts applying the federal FOIA have also conducted the entitlement determination this way. *See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 142 F. Supp. 3d 1, 6–9 (D.D.C. 2015) (evaluating the reasonableness of the government's withholding separately for different rounds of briefing and concluding that the requester was entitled to fees for both rounds); *see also Schanen v. United States Dep't of Justice*, 798 F.2d 348, 350 (9th Cir. 1985) (remanding with instructions to award costs and fees "attributable to all

proceedings following the grant of summary judgment"); *cf. Bloomgarden v. United States Dep't of Justice*, 253 F. Supp. 3d 166, 175–80 (D.D.C. 2017) (analyzing the reasonableness of the government's withholding at separate stages of the litigation). While a trial court may always make a blanket award of all of the reasonable fees to which an attorney is entitled, we agree with the District that the entitlement determination need not be unitary—that is, that it is permissible for the trial court to conclude that the prevailing litigant is entitled to costs and fees for certain periods of the litigation but not for others.[7]

**B.**

Next, Mr. Vining argues that the court misapprehended the fourth entitlement factor in that the court focused on the reasonableness of the District's "litigating strategy" and "litigation posture." In *Fraternal Order of Police*, we said that "under the fourth criterion [the reasonableness of the agency's withholding] a

---

[7] We do not agree with Mr. Vining's characterization of the record with respect to the trial court's application of the fourth entitlement factor. The trial court did not, as Mr. Vining contends, examine the reasonableness of the government's withholding as part of the third step of the attorney's fee analysis (the reasonableness of the fee amount claimed). The transcript of the court's oral ruling makes clear that the trial court instead determined, after considering all four entitlement factors, that Mr. Vining was not *entitled* to fees and costs for the period of the litigation prior to July 9—part of the second step of the analysis.

court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester." 52 A.3d at 830 (quoting S. Rep. No. 93–854, at 19) (alteration in original). We agree with Mr. Vining that there is a difference between the asserted reason for the withholding, on the one hand, and the litigation strategy employed in defense of the withholding, on the other.[8]

The history of this FOIA suit illustrates the difference between these concepts. Mr. Vining initially submitted his FOIA request to Ms. Barnes on November 12, 2013, and Ms. Barnes replied on November 25, 2013, asserting that she had no documents responsive to Mr. Vining's request beyond those that had already been disclosed to the public. *See Shurtleff v. EPA*, 991 F. Supp. 2d 1, 19 (D.D.C. 2013) ("[A]n agency may direct a FOIA requester to materials that have been previously published or made available by the agency instead of producing them again."). Beginning on November 25, then, the basis for the government's

---

[8] We do not mean to imply that consideration of the government's litigation strategy, as distinct from the asserted reason for the withholding, would necessarily be improper. The four factors are not meant to be exclusive, see note 5 *supra*, and we express no opinion on the propriety of considering a party's litigation strategy in addition to the listed factors.

withholding was that all responsive records were already available to the public.

In response, Mr. Vining filed this suit on December 11, 2013. The District did not rest on Ms. Barnes's denial but rather entered into negotiations with Mr. Vining's counsel and produced CDs containing responsive documents on February 3 and March 5, 2014. At this point, as Mr. Vining's counsel made clear in a letter on March 13, the sole point of contention between the parties concerned the emails located in Ms. Barnes's personal email account. Citing *Competitive Enterprise Institute v. National Aeronautics & Space Administration*, 989 F. Supp. 2d 74, 86 (D.D.C. 2013), the District argued that the FOIA statute did not require it to search personal email addresses of ANC Commissioners.

The trial court correctly perceived that the District had a single litigation position prior to July 9, 2014—that Ms. Barnes's personal email account fell outside the scope of FOIA. But if we look for the basis of the District's withholding, as indicated by the language we quoted in *Fraternal Order of Police*, we see two: first, that there were no responsive documents left to disclose, and second, that Mr. Vining was not entitled to the remaining responsive documents. As an ANC chair (and not the Attorney General), Ms. Barnes could not take positions on behalf of the District in litigation, but she could and did deny a FOIA request, and this denial is relevant in determining fees. This is consistent with the

legislative judgment embedded in FOIA that a requester has a right to inspect any responsive nonexempt public record of a public body without going to court. D.C. Code §§ 2-531, 2-532 (a), (c)(1). Although our cases interpreting FOIA necessarily result from requests that were denied and then litigated in court, litigation should not be regarded as the normal means of obtaining records under FOIA; FOIA imposes a duty on public bodies such as ANCs that applies prior to any litigation. *See, e.g.*, *Davy v. CIA*, 550 F.3d 1155, 1163 (D.C. Cir. 2008) ("If the government could defeat an award of fees by citing a lack of resistance after the requester files a lawsuit to obtain requested documents, then it could force plaintiffs to bear the costs of litigation."); *id.* at 1166 (Tatel, J., concurring) ("[The] fourth factor is intended to disincentivize requesters from complaining about reasonable withholdings while incentivizing the government to promptly turn over—before litigation is required—any documents that it ought not withhold."). That the judicial review provision of FOIA empowers the Superior Court to "order the production of any records *improperly withheld* from the person seeking disclosure," D.C. Code § 2-537 (b) (emphasis added), signifies that judicial relief is available only when an improper withholding has already occurred. It is this withholding—starting with the denial of a request prior to the start of litigation— that we look to when applying the four-factor test for entitlement to attorney's fees.

## C.

Having concluded that the fee entitlement determination need not be unitary and that a trial court may decide that the prevailing litigant is entitled to fees for some phases of a litigation and not others, and having clarified that the basis for the withholding (as distinguished from litigation strategy or position) must be considered as part of the entitlement determination, we turn to the application of these principles to this case.

When a court determines entitlement to fees separately for separate phases of litigation or separate classes of record requests, its choice of delimitation points is itself an act of discretion. The trial court's selection of July 9, 2014, as a dividing point in the life of this litigation was reasonable and not an abuse of discretion. Prior to that date, the law did not speak explicitly to the question whether the FOIA statute required the District to search ANC Commissioners' nongovernmental email accounts.[9] As of that date, for the purposes of this case,

---

[9] Whether the District was required to search Ms. Barnes's personal email is not directly before us, but we agree with the trial court that the District's withholding during this period had a colorable basis in law. *See United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–46 (1989) (holding that, for documents to qualify as "agency records" subject to federal FOIA, the agency must either create or obtain the records and control them at the time the request is made, and noting that "the term 'agency records' is not so broad as to include personal

(continued…)

the District no longer had a colorable legal basis for its continued withholding.

It is less clear, however, that the period prior to July 9 formed a single phase of this litigation, in that the reason for the District's withholding appears to have changed between the filing of the complaint on December 11, 2013, and the production of the records in February and March of 2014. The trial court concluded that the necessity of searching Ms. Barnes's personal email account was an issue of first impression, but it made no finding regarding the District's initial basis for withholding, which appears to have been that no responsive records existed other than those that had been made public.[10] We therefore remand for the

---

(…continued)
materials in an employee's possession, even though the materials may be physically located at the agency"); *Competitive Enter. Inst.*, 989 F. Supp. 2d at 86 (applying *Tax Analysts* and D.C. Circuit precedent to hold that NASA was not required to search an employee's @columbia.edu email account under federal FOIA).

[10] This basis was asserted by Ms. Barnes in response to Mr. Vining's initial FOIA request. We understand that the executive branch of the District government may not have been aware of the FOIA request until Mr. Vining filed suit, as Ms. Barnes was not obligated to consult with anyone within the mayoral chain of command before replying to Mr. Vining's request. We also accept for the sake of argument the District's assertion that the mayor and her subordinates lacked any authority to order Ms. Barnes to disclose records in the absence of an administrative appeal under D.C. Code § 2-537 (a), which Mr. Vining did not elect to file. *But see Kane v. District of Columbia*, 180 A.3d 1073, 1079 (D.C. 2018) (noting that "the ANC Act envisages a Mayoral and executive branch role in the direction of ANC operations" and that "the Mayor and the Attorney General have
(continued…)

trial court to determine, in the exercise of its discretion, whether Mr. Vining may be entitled to reasonable fees for an earlier phase of the litigation.[11]

## IV.    Travel Expenses

Mr. Vining next argues that the trial court erred in excluding from the fee award travel expenses incurred by his attorney, Don Padou.  Mr. Padou is a member of the District of Columbia Bar, but he has lived in California since

---

(…continued)
authority to assist ANCs in complying with their FOIA obligations").  While the initial withholding of records may therefore be attributable to Ms. Barnes rather than the District's executive branch, this does not affect Mr. Vining's entitlement to fees.  The attorney's fee subsection focuses on the prevailing party, not the government, D.C. Code § 2-537 (c), and we have recognized that a primary goal of the FOIA fee-shifting provision was to encourage citizens to seek the release of wrongfully withheld information, *see Fraternal Order of Police*, 52 A.3d at 831.  This interest is not lessened because the wrongful withholder is an ANC or ANC chair rather than an executive agency with direct mayoral oversight.

[11]    The District primarily argues for affirmance of the trial court's determination that Mr. Vining was entitled to fees only for the period after July 9, 2014.  In the alternative, if we hold that the trial court erred in denying fees for the period ending on July 9, the District asks that we remand for reconsideration of the four entitlement factors.  The District's arguments for reconsideration of the entitlement factors, which are largely addressed to the post-July 9 phase of the litigation, would be relevant if we agreed with Mr. Vining's contention that a single entitlement determination must govern the entire litigation.  As we agree instead with the trial court and the District that the entitlement determination need not be unitary, these arguments are not relevant to the limited scope of the remand, which concerns only the earliest phase of the litigation when the District withheld records from Ms. Barnes's governmental email account.

August 2013 and flew back and forth for the hearings in this case. His travel expenses, including airfare, hotel stays, ground transportation, and meals, added up to $8,125.78.

The FOIA statute's fee-shifting provision allows for an award of "reasonable attorney fees *and other costs of litigation*." D.C. Code § 2-537 (c) (emphasis added). As Mr. Vining is explicitly seeking reimbursement only for Mr. Padou's travel expenses and not for his time, this request falls under "costs of litigation" rather than "attorney fees."[12] In *Cormier v. District of Columbia Water & Sewer Authority*, 84 A.3d 492 (D.C. 2013), we held that "attorney travel expense[s] [are] not an allowable 'cost' within the meaning of Civil Rule 54(d)," which "is limited to items 'specifically authorized by 28 U.S.C. § 1920 or by other statutes (or court rule).'" *Id.* at 502 (quoting *Talley v. Varma*, 689 A.2d 547, 555 (D.C. 1997)) (ellipsis omitted). We have never held that D.C. Code § 2-537 (c) is so limited, however, and we agree with the federal appellate courts that have held that "an award of costs pursuant to [FOIA] is not limited to those authorized by § 1920."

---

[12] We have previously treated "attorney's fees" and "other costs of litigation" as separate headings under which money may be awarded pursuant to § 2-537. For example, in *Donahue v. Thomas*, 618 A.2d 601 (D.C. 1992), we held that a prevailing *pro se* nonattorney plaintiff could recover costs but not attorney's fees under the statute. *Id.* at 607, 609 & n.17.

*Kuzma v. IRS*, 821 F.2d 930, 932 (2d Cir. 1987); *see also Blazy v. Tenet*, 194 F.3d 90, 95 (D.C. Cir. 1999) ("[Section] 1920 does not serve as a limit on recovery of litigation costs under either FOIA or the Privacy Act."). When the Council included the phrase "and other costs of litigation" in D.C. Code § 2-537 (c), it must have intended to "add to the scope of costs already recoverable against the government" under Super. Ct. Civ. R. 54 (d). *Kuzma*, 821 F.2d at 932 (explaining that interpreting the words "other litigation costs" to mean only those costs already recoverable under § 1920 would effectively "excise" them from the statute by "rendering them meaningless"); *see also Grayson v. AT&T Corp.*, 15 A.3d 219, 238 (D.C. 2011) (en banc) ("A basic principle [of statutory interpretation] is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous." (brackets in original)).

As travel expenses are not categorically excluded from recovery for "costs of litigation" under D.C. Code § 2-537 (c), we must determine under what circumstances it is proper for the trial court to award them.

Though there is a dearth of precedent on the compensability of long-distance travel expenses under both D.C. Code § 2-537 (c) and the fee award provision in the federal FOIA, several courts have addressed the issue of long-distance travel

expenses under fee-shifting provisions in other statutes.  The D.C. Circuit, addressing a request for an attorney's travel expenses under the Ethics in Government Act, 28 U.S.C. § 593 (f), held that such travel was not reasonable "in the absence of some showing that local counsel could not have rendered the service involved and thereby obviated the necessity of employing an attorney who must necessarily spend billable time travelling from his normal home to the work site." *In re Cisneros*, 454 F.3d 334, 341 (D.C. Cir. 2006) (per curiam) (quoting *In re North*, 59 F.3d 184, 194 (D.C. Cir. 1995) (per curiam)).  Similarly, the Third Circuit vacated an award of long-distance travel expenses under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 (g)(1), holding that "under normal circumstances, a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel."  *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 312 (3d Cir. 2008) (internal quotation marks and citation omitted); *cf. Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710 (3d Cir. 2005) (affirming award of fees covering counsel's travel from D.C. to northern New Jersey based on trial court finding that "forum counsel were unwilling to represent ICO in this action").

On the other hand, several courts applying the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, have said that resort to out-of-forum counsel may

be justified by an attorney's unique competence or experience in a particular subject area. *See ACLU of Georgia v. Barnes*, 168 F.3d 423, 436–39 (11th Cir. 1999) (noting that the use of nonlocal counsel could be reasonable if the attorney's "extensive prior experience" resulted in more efficient representation); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983) (affirming award of travel expenses for out-of-state attorneys whose firm "had unique competence in the subject matter of [the] litigation"); *Anderson v. Wilson*, 357 F. Supp. 2d 991, 997–98, 1000 (E.D. Ky. 2005) (allowing travel expenses for out-of-forum attorneys whose hiring was deemed reasonable "in light of the complex First Amendment and election issues").[13] We agree that, absent a showing that hiring an out-of-state attorney was necessary due to the attorney's particular competence, skill, or familiarity with the litigation, cross-country travel expenses are unlikely to be reasonable if suitable local counsel who would not have incurred such expenses were willing and able to take the case.

Mr. Vining's brief on appeal offers several reasons it was reasonable for him

---

[13] *But see Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991), *superseded by statute on other grounds* (affirming award of travel expenses without inquiring into necessity of travel on the ground that out-of-pocket expenses "incurred during the course of litigation which are normally billed to fee-paying clients should be taxed under section 1988").

to hire Mr. Padou to represent him. He informs us that Mr. Padou "first consulted with Mr. Vining and other founders of Friends of McMillan Park, Inc., in early 2012 regarding a series of FOIA requests intended to reveal inappropriate conduct by the District regarding the proposed development of McMillan Park." Mr. Vining argues that it was therefore reasonable for him to retain Mr. Padou even after he moved to California in August 2013 because Mr. Padou "was familiar with the issues surrounding McMillan Park" and the two had developed "a solid attorney-client relationship." He also suggests that there are not many lawyers in D.C. who specialize in FOIA lawsuits. This information goes some way toward explaining Mr. Vining's choice of counsel, and it might have justified an exercise of discretion in favor of awarding travel expenses. Then again, it might not have if Mr. Padou's familiarity with the McMillan Park disputes was neither useful nor necessary in litigating a FOIA suit that was filed after Mr. Padou's move across the country.[14] Had the trial court denied Mr. Vining's request for travel expenses on the ground that they were not reasonably incurred, that determination likely would have been a sound exercise of discretion.

---

[14] *See Nuclear Control Inst. v. United States Nuclear Regulatory Comm'n*, 595 F. Supp. 923, 927 (D.D.C. 1984) (holding, in federal FOIA fee dispute, that "the move of counsel's law firm from Washington to Los Angeles[] may have created the need for messenger and long-distance telephone calls, but these are not to be billed to the government").

We are unable to discern, however, whether the trial court's denial of Mr. Vining's request for travel expenses was the result of a discretionary determination that they were unreasonably incurred or the belief that travel expenses are categorically excluded from awards for costs under D.C. Code § 2-537 (c).[15] As the latter ground—that travel costs are never properly awarded under the statute—would be an error of law, we remand to allow for a more clear-cut determination whether it was reasonable, under the circumstances of this case, for Mr. Vining to hire Mr. Padou and thus to incur cross-country travel expenses as part of the cost of litigation.[16]

## V. Amanuensis and Legal Secretary

Mr. Vining also appeals the trial court's exclusion of the expenses incurred by Mr. Padou due to his blindness. Because Mr. Padou is blind, he hired an amanuensis to act as his scribe, reader, and guide during court hearings, and a legal

---

[15] The trial court addressed travel expenses only briefly in its oral ruling, stating, "And, finally, I have not awarded travel costs. I do not believe that those are properly a part of any award that would be made in this case."

[16] Alternatively, the trial court may conclude that it is appropriate to include some, but not all, of Mr. Padou's travel expenses in an award for costs. *See Hernandez v. Berlin Newington Assocs., LLC*, 699 F. App'x 96, 97 (2d Cir. 2017) (affirming district court's "modest award of travel expenses for 'essential court appearances.'").

secretary to proofread, citecheck, and file his briefs. Mr. Vining sought $312 in reimbursement for the amanuensis, whom he paid $25 per hour, and $1,625 for the legal secretary, whom he paid $125 per document. The trial judge made clear that he believed these costs were "conservatively calculated" and "seemed to be a more economical way of doing the menial tasks of practicing law than Mr. Padou doing these tasks, or trying to do these tasks, for himself which would have required more hours"—in short, that they were "correctly incurred by Mr. Padou"—but he nevertheless excluded these costs from the award because he believed the correct standard was "what it will cost in the marketplace to get these services done." Because a sighted attorney would not have incurred or billed for the costs of an amanuensis or a legal secretary for these purposes, the trial judge concluded that he could not award costs for these expenses.[17]

Mr. Vining presented his request for the amanuensis and legal secretary expenses as part of his request for costs,[18] separate from his request for attorney

---

[17] The trial judge acknowledged that there was "an element of unfairness" in this ruling which he was "not entirely comfortable with."

[18] The word "costs" often "refer[s] to those items a prevailing party is entitled to recover as a matter of course" and "has been construed to mean something less than a litigant's total expenses in connection with the suit." *Robinson v. Howard Univ.*, 455 A.2d 1363, 1368 (D.C. 1983); *see also Office of People's Counsel v. Pub. Serv. Comm'n*, 477 A.2d 1079, 1083 (D.C. 1984). For

(continued…)

fees. Though we have not previously determined what standard the trial court should use when evaluating requests for "other costs of litigation" under D.C. Code § 2-537 (c), we again find guidance in other courts' approaches to awarding costs under similar fee-shifting provisions in other statutes. Several courts interpreting the fee-shifting provision for prevailing civil rights litigants under 42 U.S.C. § 1988 have held that reasonable out-of-pocket expenses incurred during the litigation may be recovered if they are normally billed to fee-paying clients and are not part of routine office overhead. *See, e.g.*, *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995) ("[O]ther out-of-pocket expenses incurred during litigation may be awarded . . . under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable."); *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991), *superseded by statute on other grounds*; *Dowdell v. City of*

---

(…continued)

example, in *Talley v. Varma*, we recognized that the word "costs" in Super. Ct. Civ. R. 54 (d)(1), which grants the trial court discretion to award costs other than attorney fees to the prevailing party, is limited to those items specifically authorized by 28 U.S.C. § 1920 in the absence of another controlling statute or court rule. 689 A.2d at 555; s*ee also Cormier*, 84 A.3d at 502. As we explained in our earlier discussion of travel expenses, however, the meaning of the word "costs" under our FOIA statute is not so limited. *See also Kuzma*, 821 F.2d at 932–33. In this context, we use the word "costs" to refer more broadly to the expenses, other than attorney fees, incurred during the course of the litigation.

*Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("We hold that, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."). As the Eleventh Circuit explained, a "liberal interpretation" of reasonableness is required to achieve the purpose of § 1988, which is to "ensure the effective enforcement of the civil rights laws, by making it financially feasible to litigate civil rights violations." *Dowdell*, 698 F.2d at 1190, 1192. The Second Circuit relied on a similar rationale in awarding a *pro se* litigant "reasonable costs of litigation"—including "photocopying, postage, covers, exhibits, typing, transportation, and parking fees"—under the federal FOIA, reasoning that alleviating the financial burdens of citizens seeking information from the government was crucial to the statute's purpose of "encourag[ing] activity of 'private attorneys general' in furtherance of a 'national policy of disclosure of government information.'" *Kuzma*, 821 F.2d at 932–33 (quoting S. Rep. No. 93-854, at 17 (1974)).

The fee-shifting provision in the D.C. FOIA was animated by similar concerns. Like § 1988 and the fee award provision of the federal FOIA, § 2-537 (c) was meant to effectuate the purpose of the statute—here, to "promote open

government and combat government resistance to the same"—by making it financially feasible for private citizens to enforce compliance with the law through litigation. *Fraternal Order of Police*, 52 A.3d at 831–32; *Frankel*, 110 A.3d at 558 ("[T]he fee award provision is meant to encourage citizens to seek the release of information wrongfully withheld." (quoting D.C. Council, Memorandum on Bill 1–119 at 8 (July 23, 1975))). The standard articulated above serves that purpose, and we agree with Mr. Vining that it is the proper standard for evaluating requests for costs under the D.C. FOIA fee award provision. Prevailing litigants may therefore recover, as part of an award of "other costs of litigation" under D.C. Code § 2-537 (c), the reasonable out-of-pocket expenses incurred during litigation that would normally be billed to a fee-paying client. Whether a particular cost is reasonable depends upon "the necessities of the case," and as a result, "even relatively large or unusual costs may be taxed [so long as] they are reasonably incurred." *Dowdell*, 698 F.2d at 1191.

The District defends the trial court's exclusion of the amanuensis and legal secretary costs by arguing that they are overhead expenses, which are not separately compensable because they are encompassed within the hourly rate awarded for Mr. Padou's time. Overhead expenses include, for example, the rent and utility payments on a law office and the salaries of receptionists, librarians, and

clerical support staff, which are fixed costs not attributable to any individual case. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 974 (D.C. Cir. 2004). Yet as Mr. Vining's fee petition and briefs make clear, the costs of the amanuensis and legal secretary do not fall into this category. Both were hired for particular hearings and particular filings in this case and paid by the job. Unlike true overhead costs, these expenses would not have been incurred but for Mr. Padou's work on Mr. Vining's case. *Cf. Ragan v. Comm'r of Internal Revenue*, 210 F.3d 514, 523 (5th Cir. 2000) ("Because computer memory is scalable, it can be a direct, variable cost that is not overhead. In other words, because memory can be purchased in increments, on an as-needed basis, it is possible and reasonable to attribute memory usage to a particular client."); *Luna v. Harris*, 691 F. Supp. 624, 627 (E.D.N.Y. 1988) (describing costs "traceable to a specific lawsuit" as not part of a law office's general overhead).

As the amanuensis and legal secretary costs here do not fall into the category of overhead, they are recoverable if they are costs normally billed to Mr. Padou's fee-paying clients and if they were reasonably incurred in the circumstances of this case. The trial court misstated the law when it compared the expenses Mr. Padou incurred due to his blindness with "what it will cost in the marketplace to get these services done." The proper inquiry is not whether a sighted lawyer would have

hired or charged for an amanuensis or legal secretary for the purposes described in his fee petition; it is whether it was reasonable for Mr. Padou to do so. *See Dowdell*, 698 F.2d at 1191.[19]

We therefore remand for the trial court to apply the correct standard to determine whether Mr. Vining is entitled to the costs incurred for the amanuensis and legal secretary. *See Frankel*, 110 A.3d at 558 ("A court by definition abuses its discretion when it makes an error of law." (internal quotation marks omitted)). On remand, the trial court should first determine whether Mr. Padou typically bills his fee-paying clients for similar out-of-pocket expenses. It should then consider whether and to what extent it was reasonable for him to incur costs for the amanuensis and legal secretary in this case. The trial court should also take into account, in analyzing the reasonableness of these costs, its own previous findings that the amanuensis and legal secretary costs were "conservatively calculated" and

---

[19] It is correct, however, to look to the "prevailing market rates in the relevant community for attorneys of similar experience and skill" to determine the lodestar, or reasonable hourly rate, when evaluating a request for attorney fees based on the number of hours billed on the case. *Tenants of 710 Jefferson St., NW v. District of Columbia Rental Hous. Comm'n*, 123 A.3d 170, 181 (D.C. 2015) (internal quotation marks omitted). The reasonableness of Mr. Padou's hourly rate is not at issue in this appeal.

actually reduced the number of hours Mr. Padou spent working on the case.[20]

---

[20] After the trial court denied his request for the amanuensis and legal secretary costs based on the wrong standard, Mr. Vining requested that the court award at least part of the legal secretary cost because a sighted lawyer could have done that work himself and "would have legitimately charged for it." The trial court denied this request as well, reasoning that "the problem with that is that it was done by a secretary" and that "we don't allow reimbursement for legal secretarial work."

We view this request as an attempt to recategorize the secretarial work as part of Mr. Vining's attorney fee, and we discern from the exchange in court that the trial court denied the request on the ground that lawyers usually cannot bill clients for clerical or secretarial work. In general, a reasonable attorney fee includes compensation for the hours billed by paralegals, legal assistants, or law clerks at their market rates, s*ee, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 285–90 (1989), but not for "librarians, clerical personnel and other support staff," whose work is assumed to be "within the overhead component of a lawyer's fee," *Role Models*, 353 F.3d at 974 (quoting *In re Olson*, 884 F.2d 1415, 1426–27 (D.C. Cir. 1989)). The legal secretary in this case, however, did not perform only clerical or secretarial tasks; in addition to filing Mr. Padou's briefs, the legal secretary also proofread and citechecked them. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (distinguishing purely clerical or secretarial tasks, such as organizing folders, document preparation, copying, and updating a case list, from legal work that is "sufficiently complex to justify the efforts of a paralegal" (internal quotation marks omitted)). As courts consistently allow *lawyers* to recover fees for time spent editing and citechecking legal briefs, *see, e.g.*, *W. Va. Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 365–66 (3d Cir. 1990); *Berthold Types Ltd. v. Adobe Sys., Inc.*, 186 F. Supp. 2d 834, 839 (N.D. Ill. 2002) ("Although it may be more efficient to use paralegals for cite-checking and proofreading, it is not unreasonable for an attorney to perform these tasks."), these tasks decidedly are not clerical or secretarial. In other words, work of this nature is not properly excluded from a reasonable attorney fee merely because the person who performed the service was identified as a "legal secretary" rather than a "paralegal."

## VI.   Motions

Finally, the District, cross-appealing, challenges the trial court's award of fees for work on two motions that it contends were unrelated to the successful FOIA claim.  "The central question . . . is whether the work was useful and necessary in advancing the litigation to its successful conclusion."  *Frankel*, 110 A.3d at 560 (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986)).

The District first challenges the award of fees in the amount of $6,330 for a motion for a preliminary injunction that Mr. Vining filed on May 15, 2015.  The motion was denied as moot,[21] but this fact alone is not dispositive.  *See id.* at 559–60.  The District argues, however, that the motion unsuccessfully raised a claim distinct from the FOIA claim on which Mr. Vining prevailed.  Mr. Vining sought to enjoin the District as a whole "from holding any more public hearings on the proposed development of McMillan Park until [the Superior Court] has had an opportunity to address the merits of this case."  The motion and supporting

---

[21] At a status hearing on June 9, 2015, the trial judge indicated that he was inclined to deny the motion on the merits but, with Mr. Vining's consent, he instead deferred action.  The motion remained pending when the case was dismissed on November 5, 2015, and the dismissal order denied the motion as moot.

memorandum refer to hearings held by the Zoning Commission, the Historic Preservation Review Board, and the Council of the District of Columbia. Although the motion did not identify any authority under which the court could enjoin these hearings, it could not have been FOIA, which grants the Superior Court power only to "enjoin [a] public body from withholding public records and order the production of any records improperly withheld" and to award attorney's fees and costs. D.C. Code § 2-537 (b), (c). This motion sought a different form of relief against different arms of the District from the claim upon which Mr. Vining prevailed: it sought to prevent or delay hearings by agencies and the Council, rather than win the disclosure of records from an ANC chair. Mr. Vining does not defend the fee award on the ground that the motion was intended to give him additional leverage in his struggle for the withheld records, and we see no indication that the motion provided any such leverage. Under these circumstances we cannot say that the work Mr. Padou performed on the motion was "useful and necessary in advancing the litigation to its successful conclusion," *Frankel*, 110 A.3d at 560, and the award of fees was therefore an abuse of discretion.

Second, the District challenges the award of fees in the amount of $5,640 for a motion for summary judgment that Mr. Vining never filed or served upon the District. Mr. Vining argues that filing and service were no longer needed because

the District changed its behavior in response to news of the motion: on June 7, 2015, Mr. Padou sent an email to opposing counsel as required by Super. Ct. Civ. R. 12-I informing the District of Mr. Vining's intent to seek summary judgment, and within ten days the District produced twelve additional records. The parties draw analogies to two earlier cases in which a pleading or motion was drafted but never filed, and we view this case as falling somewhere in between. In *Cooper v. United States Railroad Retirement Board*, 24 F.3d 1414, 1417 (D.C. Cir. 1994), the D.C. Circuit denied fees for "time spent preparing a pleading for which leave to file was denied and there was no indication that the pleading had any effect on the proceedings." *Frankel*, 110 A.3d at 559. In *Frankel*, by contrast, we held that "when a party drafts a motion or pleading and sends that document to opposing counsel, who alters his behavior because of the document, attorney's fees are reasonable even if the document is never filed." *Id.* The question, then, is whether there was sufficient reason to believe that the District's additional disclosure was because of the unfiled motion for summary judgment. Mr. Vining, pointing to the sequence of events and the District's litigation tactics throughout the case, argues that it was. The District calls this speculation and casts the disclosure as "part of the ongoing process—by both sides—of narrowing the number of disputed documents." Both arguments are plausible, and an exercise of discretion by the

trial court could likely be sustained in either direction; this trial court, familiar as it was with the course of the litigation, awarded fees for the motion, and we cannot say it abused its discretion in doing so.

## VII.   Conclusion

In conclusion, we reverse the award of fees for Mr. Vining's motion for a preliminary injunction and remand for the trial court to reconsider his request for fees for the first phase of the litigation and for out-of-pocket expenses incurred for long-distance travel, the amanuensis, and the legal secretary.  We affirm the award of fees for Mr. Vining's unfiled motion for summary judgment.

*So ordered.*